SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
GEOFFREY A. BARROW
Geoffrey.Barrow@usdoj.gov
Assistant United States Attorneys
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:25-cr-00306-001-AB |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **JOSEPH DAVID EMERSON,** | |
| **Defendant.** | Sentencing: November 17, 2025 at 10:00 a.m. |

On October 22, 2023, Horizon Airlines flight #2059 departed Paine Field in Everett, Washington, with 84 passengers bound for San Francisco International Airport. It would not reach its destination because the defendant, a highly trained airline captain, pulled the fire-suppression handles, cutting fuel to both engines. He did so to awaken from a self-inflicted drug-induced psychosis. It was only through the heroic actions of the flight crew, who were able to physically restrain the defendant and restore normal operations of the aircraft, that no lives were lost that day. Actions have consequences. The defendant must be held accountable for his conduct.

**Government's Sentencing Memorandum**                                                                 Page 1

For all the reasons set forth herein, the government recommends a low-end sentence of 12 months' imprisonment, followed by a three-year period of supervised release and a $100 special assessment.

## I.     Factual Background

### A.  The Offense Conduct

The Presentence Investigation Report (PSR) accurately summarizes the offense conduct in paragraphs 15 through 20, which are incorporated herein by reference.

On Friday, October 20, 2023, defendant attended a "guy's trip." *See,* The New York Times Presents: *Lie to Fly*, http://www.hulu.com (a documentary film in which defendant is prominently featured describing the incident) (hereinafter "*Lie to Fly*"). By his own account, he drank heavily, "enjoying a boy's weekend," when the "opportunity to consume psilocybin came up." *Id.* In the film, he described ingesting psilocybin, a Schedule I controlled substance, because "his barriers to use had been taken away." *Id.* Notably, as a commercial airline captain, defendant was, at all times, subject to drug and alcohol testing and was undoubtably aware of his obligations and responsibilities. *See,* 49 CFR part 40 and 14 CFR part 120.

Defendant reportedly had an adverse reaction to the psilocybin. *See, Lie to Fly*. He feared that his friends, presumably including those who provided the "opportunity" to ingest the illicit psilocybin, were going to kill him. *Id.* He woke up the following day, still adversely impacted. *Id.* He felt trapped and wanted to return home. *Id.* In the film, he described checking in for the flight in a "dreamlike" state. *Id.* Nevertheless, he had the wherewithal to take advantage of a privilege he enjoyed as an airline captain. He was granted access to the flight deck and traveled for free as a "deadhead" in a cockpit "jump seat." That put him in close proximity to Pilot 1 and Pilot 2 as well as critical flight controls. It also imposed on him a

**Government's Sentencing Memorandum**                                                                                              **Page 2**

responsibility to act as a member of the crew. As a crew member, he shared responsibility for the safety of the aircraft, including pointing out anything irregular. He did not report his medical condition to the airline or the flight crew.

On October 22, 2023, flight 2029 took off from Everett, Washington, headed for San Francisco. Initially, audio from the cockpit recorded normal conversations between Pilot 1, Pilot 2 and defendant. At about 6:11 p.m., the flight was diverted to Portland International Airport due to an inflight disturbance caused by the defendant when he deployed the fire extinguisher system, cutting off fuel to the plane's engines.

Pilot 1, who was the Pilot in Command at the time of the incident, stated that the incident occurred approximately halfway between Portland and Astoria, an area within the special air jurisdiction of the United States. While sitting in the cockpit jump seat, defendant said, "I'm not okay." Pilot 2 turned and observed defendant reaching up and grabbing the red fire suppression handles and pulling them down. Pilot 1 explained to law enforcement that pulling the handles activated the aircraft's fire suppression system used to extinguish aircraft engine fires. Investigators subsequently determined that, as a result of defendant's actions, both fire suppression bottles deployed.

Flight #2059 was an Ebraer E175, a medium-range, twin-engined jet airliner. The fire suppression system in an Ebraer E175 consists of a red T-handle for each engine located on the overhead panel of the flight deck. *See* Figure 1. If the T-handle is fully engaged, a valve in the wing closes to shut off fuel to the engine.

/ / /

/ / /

E175 Fire Suppression Handles:



Figure 1

After defendant's outburst, Pilot 1 grabbed defendant's wrist while Pilot 2 declared an inflight emergency. Defendant initially resisted, and they physically struggled for a short period. After subduing defendant, Pilot 1 directed defendant to leave the cockpit, and he complied. Pilot 1 estimated that this incident lasted about 90 seconds.

Pilot 2 observed defendant throw his headset across the cockpit and announce, "I am not okay." Pilot 2 observed defendant grab both fire suppression handles. Pilot 2 declared an inflight emergency, turned the autopilot off, and changed the aircraft's course to fly to Portland.

Pilot 2 told law enforcement that defendant was unable to pull the red handles down all the way and fully activate the engine shutoff due to the pilots wrestling with defendant.

**Government's Sentencing Memorandum** **Page 4**

According to Pilot 2, if defendant had successfully pulled the red engine shutoff handles down all the way, it would have shut down the hydraulics and fuel to the engines, turning the aircraft into a glider within seconds. Pilot 2 stated that defendant's actions interfered with their ability to operate the aircraft.

The audio recording from the cockpit captures Pilot 1 breathing heavily following his altercation with defendant. Both pilots heroically carried out their responsibilities to secure the safety of the aircraft, its passengers and crew. The gravity of the incident is palpable.

After the plane landed safely in Portland, Oregon, responding police officers detained defendant, advised him of his rights, and interviewed him. Defendant told officers, "mentally [I] am in crisis," that he had not slept for approximately 48 hours and that he had the feeling that everything wasn't real. When asked, "How long have you been depressed?" defendant answered, "I don't know. My friend died like six years ago."

Defendant told officers that he was an employee of Alaska Airlines and had been a pilot since 2001. Defendant said he felt dehydrated and tired. He confirmed that he sat in the cockpit during the flight. He said, "I didn't feel okay. It seemed like the pilots weren't paying attention to what was going on. They didn't…it didn't seem right." Defendant also said, "Yah…I pulled both emergency shut off handles because I thought I was dreaming and I just wanna wake up." Defendant denied taking any medication. Defendant admitted, "I put 84 peoples' lives at risk, today, including my own."

B.  **The Charges**

On October 23, 2023, defendant was charged by Complaint. On August 4, 2025, the government filed a one-count Information charging defendant with Interference with Flight Crew Members and Attendants in violation of 49 U.S.C. § 46504.

## II. Plea Agreement and Guidelines Computations

On September 5, 2025, defendant filed a Waiver of Indictment and entered a guilty plea to the one-count Information

The sentencing guidelines are accurately set forth in paragraphs 7, 8 and 10 of the plea agreement and in paragraphs 28 through 37 of the PSR.

## III. Argument

### A. Government's Recommended Sentence

Pursuant to the plea agreement and applicable advisory sentencing guidelines, the government recommends a sentence of 12 months' incarceration followed by a three-year period of supervised release. A sentence of 12 months' incarceration is necessary due to the extremely serious nature of defendant's conduct. He was not an ordinary citizen. Defendant was a highly trained and well compensated airline captain entrusted by the federal government and his employer with ensuring the safety of all airline passengers. He flagrantly betrayed that trust while "enjoying a boy's weekend," by knowingly ingesting a powerful Schedule I controlled substance when the "opportunity to consume psilocybin came up," because "his barriers to use had been taken away." *Lie to Fly*. While experiencing an unanticipated reaction to the illicit hallucinogenic, he compounded his poor judgment by deliberately placing himself in the cockpit of a commercial airliner while suffering a drug-induced psychosis. His poor choices during that extended weekend seriously endangered his own life and the lives of the 83 passengers and crew of flight #2039. He must be held accountable for those choices and, given the circumstances outlined above, nothing short of 12 months' incarceration is sufficient.

/ / /

/ / /

### B.    Restitution and Forfeiture

Alaska Airlines incurred $59,608.25 in expenses as a result of the diversion of the aircraft to Portland.  The defendant paid this amount in Multnomah County case #23CR51764.  The government is not seeking further restitution.

There are no outstanding forfeiture issues.

## IV.    Conclusion

For the above reasons, the government respectfully recommends the Court impose a sentence of 12 months' imprisonment, followed by a three-year period of supervised release and a $100 fee assessment.

Dated: November 12, 2025

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

s/ *Geoffrey A. Barrow*
GEOFFREY A. BARROW
Assistant United States Attorney
